IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| KAJUANA LAMEKA SMALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-cv-02722-TLP-tmp |
| | ) | |
| SYKES ENTERPRISES, | ) | |
| INC. and/or ALPINE | ) | |
| ACCESS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Before the court is defendants Sykes Enterprises, Inc. and Alpine Access, Inc.'s Motion for Summary Judgment, filed on November 4, 2020.[1] (ECF No. 42.) When *pro se* plaintiff Kajuana Lameka Small failed to timely respond to defendants' motion, this court entered an Order to Show Cause directing Small to file a response by December 16, 2020. (ECF No. 43.) To date, Small has not filed a response to defendants' motion. For the reasons below, the undersigned recommends that defendants' motion be granted.

## I.   PROPOSED FINDINGS OF FACT

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

As an initial matter, because Small did not file a response, she has not challenged any of the factual assertions made by defendants Sykes Enterprises, Inc. and Alpine Access, Inc.'s ("Defendants"). Local Rule 56 requires that a party opposing a motion for summary judgment "must respond to each fact set forth by the movant by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." LR 56.1(b). Furthermore, "[e]ach disputed fact must be supported by specific citation to the record." Id. Similarly, Rule 56 of the Federal Rules of Civil Procedure requires that a party support or challenge factual assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). When a party fails to properly challenge an opposing party's assertion of fact, Rule 56(e) permits the court to "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). Accordingly, the

- 2 -

following facts are deemed undisputed for the purpose of resolving this motion.

Defendants provide outsourced customer service for client companies and employ Customer Service Agents at call centers all around the world. (ECF No. 42-2 at 1.) From November 2012 until February 7, 2019, plaintiff Kajuana Lameka Small was one such agent. (ECF No. 42-2 at 2-3.) Small was first assigned to the Sprint Oceans Collections account, where she worked until the account was closed in December 2014. (ECF No. 42-2 at 2.) She was then reassigned to the AT&T account before ultimately being assigned to the Microsoft Xbox account in April 2015. (ECF No. 42-2 at 2.) According to the complaint, Angela Jensen, her manager after being transferred to the Microsoft Xbox account, tried to let her go "for no reason at all" and, after expressing her concern that she was missing a whole week of pay, denied her various promotions and opportunities to transfer into different departments. (ECF No. 1-2 at 1-2.) Small alleges that she reported Jensen to management and that she was subsequently transferred to a new team. (ECF No. 1-2 at 2.)

In 2016, while apparently still working for the Microsoft Xbox account, she was transferred to a new team led by Jerry Taylor. (ECF No. 1-2 at 2.) Small alleges that Taylor would require her to meet with him during lunchbreaks and would not compensate her for any of this time. (ECF No. 1-2 at 2.) As a result, she

- 3 -

alleges that her hours were never correct. (ECF No. 1-2 at 2.) She reported Taylor's actions to Human Resources, who reprimanded him. (ECF No. 1-2 at 2.) It was while she was working under Taylor that Small began to receive phone calls involving racial slurs and derogatory comments towards her. (ECF No. 1-2 at 2.) According to Small, she often recognized the voices on the phone as those of her managers. (ECF No. 1-2 at 2.) These calls continued after she was transferred to Joshua Lanter's team.[2] (ECF No. 1-2 at 2.) While working under Lanter, Small alleges that she was hardly ever assigned to work a full forty hours in a given week, and instead averaged only thirty-two hours per week.[3] (ECF No. 1-2 at 2.) She also alleges that because of "problems," Lanter tried to deduct hours that she had worked from her pay on August 11, 2017. (ECF No. 1-2 at 2.) According to Small, this was partly due to the fact that on February 22, 2018, she opted to join a Fair Labor Standards Act ("FLSA") class action lawsuit against Defendants.[4] (ECF No. 1-

---

[2]It is unclear from the record when she was transferred to Lanter's team, though she alleges that this was "after being moved around several times." (ECF No. 1-2 at 2.)

[3]Small's offer letter from Defendants reads: "Your hours of work on a daily or weekly basis are not fixed or guaranteed and are subject to the demands of Alpine Access' customers. You should expect to experience even sudden reductions in the hours to be worked on a given shift and in the frequency of shifts from time to time." (ECF No. 42-3 at 9.)

[4]Carol Morse v. Alpine Access, Inc., No. 5:17-cv-00235-BKS-ATB (N.D.N.Y. 2017). In brief, the lawsuit alleges that Defendants did not compensate class member plaintiffs for time spent logging into

2 at 1.) During this time, Lanter informed Small that she was his top performer but did not give her a raise. (ECF No. 1-2 at 2.) Small was next transferred to Lawnya Anderson's team, where she was informed that she would be receiving a $3.00 per hour raise. (ECF No. 1-2 at 2.) According to the complaint, she continued to receive racist and offensive calls after being transferred to Anderson's team. (ECF No. 1-2 at 2.) On September 20, 2018, Small sent in an application for "tenure" pay (presumably the $3.00 per hour raise), which she did not receive until late October 2018. (ECF No. 1-2 at 2.) Soon after receiving her "tenure" pay, Anderson asked Small to submit a picture of herself for her company biography.[5] (ECF No. 1-2 at 2.)

Meanwhile, beginning in November 2018, the Microsoft Xbox account began to "ramp down" and move its operations offshore. (ECF No. 42-2 at 2.) As a result, on January 19, 2019, Small and 103 other agents were transferred to the Intuit TurboTax account, which needed more employees for the upcoming tax season. (ECF No. 42-2 at 3.) Small did not continue to receive her $3.00 per hour raise after being transferred to the Intuit TurboTax account. (ECF No. 1-2 at 2.) To get her up to speed, Small was given a weeklong

---

and out of their computers and for time spent resolving technical difficulties. (ECF No. 42-5.)

[5]Small alleges that she was required to submit a biography and picture each time she was transferred to a new team. (ECF No. 1-2 at 1.)

training session. (ECF No. 1-2 at 2.) According to the complaint,
Small's questions and requests for help with the onboarding process
were repeatedly ignored. (ECF No. 1-2 at 2.) Then, on February 4,
2019, Small received a settlement check from the FLSA class action
lawsuit. (ECF No. 1-2 at 2-3.) When she was not scheduled to work
forty hours the following week, Small contacted Daniel Criner about
how she could receive more hours. (ECF No. 1-2 at 3.)

Because Intuit TurboTax maintains high performance standards,
it "performs its own call monitoring and audits, and routinely
requests removal of [agents]." (ECF No. 42-2 at 3.) On February 6,
2019, an Intuit TurboTax representative contacted Defendants to
express its dissatisfaction with approximately 140 agents assigned
to the account and requested that these agents be removed. (ECF
No. 42-2 at 3.) The next day, Small received an email from
Defendants informing her that her employment was being terminated
but that she was eligible to reapply for a position on a different
account. (ECF Nos. 1-2 at 3; 42-3 at 34.) However, soon thereafter,
Small learned about an email sent by management that solicited
people to sign up for additional shifts and overtime. (ECF No. 1-
2 at 3.) In total, 123 employees, including Small, were terminated
on February 7, 2019. (ECF No. 1-2 at 4-6.) According to a
spreadsheet attached to the complaint, sixty of the employees
identified as "Black or African American," thirty-two identified
as "White," seven identified as "Two or More Races," sixteen

identified as "Hispanic/Latino," five identified as "Asian," two identified as "American Indian or Alaskan Native," and one employee's race was "Unknown/Not Disclosed."[6] (ECF No. 1-2 at 4-6.)

On March 26, 2019, Small filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC"), alleging retaliation and discrimination based on her race and national origin. (ECF No. 1-1 at 3.) Her charge with the THRC alleges that (1) she had been transferred between several supervisors for complaining that her managers impersonated customers to make racist comments to her over the phone; (2) she was denied a $3.00 per hour raise from May 2018 until September 2018; (3) she received a $3.00 per hour pay cut after uploading a picture of herself for a company biography; and (4) she was "retaliated against for joining a class action lawsuit and uploading [a] picture in [her] profile because of [her] race (Black) and national origin (Ethiopian), in violation of Title VII of the Civil Rights Act of 1964, as amended." (ECF No. 1-1 at 3.) The Equal Employment Opportunity Commission ("EEOC") sent her a letter informing her of her right to sue on August 21, 2019. (ECF No. 1-1 at 1.) On October 23, 2019, Small filed the lawsuit that is presently before the court. (ECF No. 1.) On the form complaint, Small checked the boxes

---

[6]Small asserts in her complaint that this document was provided to her by Defendants. (ECF No. 1-2 at 3.)

alleging claims of termination of employment, failure to promote, and retaliation. (ECF No. 1 at 4.) She also checked the boxes alleging that the discrimination was based on her race (Ethiopian), color (black), and national origin (Louisiana Creole/Arabian descent). (ECF No. 1 at 4.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "The moving party bears the initial burden of production." Palmer v. Cacioppo, 429 F. App'x 491, 495 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" Jakubowski v. Christ Hosp., Inc., 627 F.3d 196, 200 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]f the nonmoving party fails to make a sufficient showing on an

essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001); see also Gordon v. Louisville-Jefferson Cty. Metro Gov't, No. 3:08-cv-0029, 2011 WL 777939, at *4 (W.D. Ky. Feb. 28, 2011) ("[T]o survive summary judgment, [the nonmovant] must provide evidence 'beyond his pleadings and his own conclusory statements, to establish the existence of specific triable facts.'" (quoting Maki v. Laako, 88 F.3d 361, 364 (6th Cir. 1996)). "In order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence' [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy." Lewis v. Philip Morris Inc., 355 F.3d 515, 534 (6th Cir. 2004). "The central issue 'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Palmer, 429 F. App'x at 495 (quoting Anderson, 477 U.S. at 251-52).

The court recognizes that Small is a *pro se* plaintiff, and *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed. Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011). Even so, *pro se* litigants must adhere to the Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989),

and the court cannot create a claim that has not been spelled out in a pleading. See Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted).

## B. Statute of Limitations

"Generally, the timely filing of a charge of discrimination with the EEOC is a condition precedent to a Title VII lawsuit." Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177 F.3d 394, 407 (6th Cir. 1999). "Pursuant to the statutory language of Title VII, the applicable statute of limitations begins to run from the date of 'the alleged unlawful employment practice[.]'" Sam Han v. Univ. of Dayton, 541 F. App'x 622, 627 (6th Cir. 2013) (quoting 42 U.S.C. § 2000e-5(e)(1)). Ordinarily, "[i]f the alleged discrimination occurred more than 180 days before the plaintiff files an EEOC charge, claims based on that discrimination are barred." Turner v. City of Memphis, No. 2:17-cv-2447, 2018 WL 283752, at *1 (W.D. Tenn. Jan. 3, 2018). Tennessee, however, is a deferral state, meaning that plaintiffs must file their EEOC charges within 300 days of the alleged discriminatory act.[7] Id. (citing Alexander, 177 F.3d at 407); see also Tartt v. City of Clarksville, 149 F. App'x 456, 460 (6th Cir. 2005) ("In a deferral

---

[7]A deferral state is one "which has enacted its own laws prohibiting discrimination in employment." Alexander, 177 F.3d at 407.

state, when a plaintiff institutes the relevant state proceedings,
. . . , he must file his EEOC charge within 300 days of the alleged
discrimination.").

Small's complaint appears to contain claims that date as far
back as 2015.[8] "The 300 day limitations period begins to run when
a plaintiff has knowledge of the employment decision, practice, or
action at issue, not when a plaintiff becomes aware of the
consequences of the act or when she believes it to be unlawful."
Jenkins v. Metro Bd. of Educ., No. 3:12-0062, 2012 WL 874718, at
*3 (M.D. Tenn. Mar. 14, 2012) (citing Amini v. Oberlin College,
259 F.3d 493, 498-99 (6th Cir. 2001)). Small did not file her
charge of discrimination with the THRC until March 26, 2019. Thus,
the undersigned submits that all of Small's allegations pre-dating
May 30, 2018, are barred by Title VII's statute of limitations.[9]

## C.    Title VII Retaliation

Title VII prohibits employers from "discriminat[ing] against
. . . [an employee] . . . because [the employee] has opposed any

---

[8]Her THRC charge references alleged discrimination dating back to
December 12, 2012. (ECF No. 1-1 at 3.)

[9]This includes most of her transfers (aside from the November 2018
transfer to Intuit TurboTax) that were allegedly due to her
complaining to Human Resources that her managers were posing as
customers to make racial slurs towards her. (ECF No. 1-2 at 1-2.)
It is unclear from the record whether her transfer from Lanter's
team to Anderson's team occurred after the May 30, 2018 cutoff.
(ECF No. 1-2 at 2.) For purposes of this motion, the undersigned
will assume that any Title VII claim related to that transfer is
not time barred.

. . . unlawful employment practice . . . or because [the employee] has made a charge" that the employer has engaged in an unlawful employment practice. 42 U.S.C. § 2000e-3(a). Unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment[.]" 42 U.S.C. § 2000e-2(a)(1). A Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 538 (6th Cir. 2008). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." Id. at 543-44 (citing Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003) and Christopher v. Stouder Mem'l Hosp., 936 F.2d 870, 879 (6th Cir. 1991)). Because Small does not have direct evidence of retaliation and instead relies only upon circumstantial evidence, the McDonnell Douglas framework applies. See Jordan v. Kohl's Dept. Stores, 490 F. App'x 738, 742 (6th Cir. 2012) (citing Spengler v. Worthington Cylinders, 615 F.3d 481, 491 (6th Cir. 2010)).

Under McDonnell Douglas, Small bears the initial burden of establishing a *prima facie* case of retaliation by showing (1) she

engaged in a protected activity, (2) Defendants knew about the
protected activity, (3) Defendants subsequently acted in a manner
that was "materially adverse" to her, and (4) there was a causal
connection between her protected activity and Defendants'
materially adverse act. Laster v. City of Kalamazoo, 746 F.3d 714,
730 (6th Cir. 2014) (citing Jones v. Johanns, 264 F. App'x 463,
466 (6th Cir. 2007) and Burlington N. & Santa Fe Ry. Co. v. White,
548 U.S. 53, 67–68 (2006)). "The Supreme Court in Burlington
Northern . . . made clear that the scope of Title VII's retaliation
provision is broader than that of Title VII's discrimination
provision." Hawkins v. Anheuser–Busch, Inc., 517 F.3d 321, 345
(6th Cir. 2008). "In contrast to Title VII's discrimination
provision, the 'adverse employment action' requirement in the
retaliation context is not limited to an employer's actions that
solely affect the terms, conditions or status of employment, or
only those acts that occur at the workplace." Id. (citing
Burlington N., 548 U.S. at 64). "The retaliation provision instead
protects employees from conduct that would have 'dissuaded a
reasonable worker from making or supporting a charge of
discrimination.'" Id. (citing Burlington N., 548 U.S. at 68); see
also Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013)
("Further, the Supreme Court has recognized that actions typically
construed as nonmaterial could rise to the level of an adverse
employment action when considered in context[.]").

If Small meets her *prima facie* case requirement, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision." Melton v. U.S. Dep't of Labor, 373 F. App'x 572, 576 (6th Cir. 2010) (quoting Yellow Freight Sys., Inc. v. Reich, 27 F.3d 1133, 1138 (6th Cir. 1994)). Should Defendants provide such a reason, Small must then show that Defendants' reason was pretextual. See O'Donnell v. City of Cleveland, 838 F.3d 718, 726–27 (6th Cir. 2016). To raise a genuine issue of fact as to pretext, a plaintiff must show that (1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate the defendant's action, or (3) the proffered reason was insufficient to motivate the action. Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 589 (6th Cir. 2002). Small can defeat summary judgment only if her evidence is sufficient to "create a genuine dispute at each stage of the McDonnell-Douglas inquiry." Kubik v. Cent. Mich. Univ. Bd. of Trs., 717 F. App'x 577, 581 (6th Cir. 2017) (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000)). "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007).

    1.   Retaliation for Participating in the Class Action Lawsuit and Uploading her Picture

Small's allegations that she was terminated for participating in the class action lawsuit and for uploading a picture of herself fail because she has not established that she either participated in a Title VII proceeding or opposed a practice that Title VII prohibits. There are two types of protected activity under Title VII: opposition and participation. See E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1066 (6th Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). The Sixth Circuit recognizes that the participation clause protects employees "who have participated in any manner in Title VII proceedings." Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 720 (6th Cir. 2008) (quoting Johnson v. Univ. of Cincinnati, 215 F.3d 561, 582 (6th Cir. 2000)). As for the opposition clause, "[t]he term 'oppose,' being left undefined by the statute, carries its ordinary meaning, . . . '[t]o resist or antagonize [. . .]; to contend against; to confront; resist; withstand.'" Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 276 (2009) (citing Webster's New International Dictionary 1710 (2d ed. 1957)). "The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." Laster, 746 F.3d at 730 (citing Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc., 495 F. App'x 651, 655 (6th Cir. 2012)). Indeed, whenever any employee communicates "to her employer a belief that the employer has engaged in . . . a

- 15 -

form of employment discrimination . . . , that communication
virtually always 'constitutes the employee's *opposition* to that
activity.'" <u>Davis v. City of Memphis Fire Dept.</u>, 940 F. Supp. 2d
786, 797 (W.D. Tenn. 2013) (quoting <u>Crawford</u>, 555 U.S. at 276
(emphasis in original)).

Because an FLSA class action lawsuit is not a Title VII
proceeding, Small did not participate in a protected activity that
would subject Defendants to Title VII's anti-retaliation
provision. <u>See</u> 42 U.S.C. §2000e-3(a); <u>Niswander</u>, 529 F.3d at 720;
<u>see also</u> <u>Slagle v. Cty. Of Clarion</u>, 435 F.3d 262, 268 (3d Cir.
2006) ("[W]e require only that the plaintiff file a formal
complaint that alleges one or more prohibited grounds in order to
be protected under Title VII."). And obviously, uploading a picture
for a company biography does not equate to opposing "a practice
declared discriminatory under Title VII." <u>McDonald v. NYK
Logistics (Americas), Inc.</u>, No. 09-cv-02264-STA-dkv, 2011 WL
197578, at *11 (W.D. Tenn. Jan. 19, 2011).

In any event, even if there was a dispute of material fact as
to whether participating in the FLSA class action lawsuit
constituted a protected activity, Small has not provided any
evidentiary support for the second prong of a retaliation claim:
that the protected activity was known to the employer. A plaintiff
cannot establish a *prima facie* claim for retaliation absent proof
that "'relevant management decisionmakers' knew of plaintiff's

'exercise of protected activity.'" Bates v. Am. Axle Mfg., Inc., No. 17-cv-11796, 2018 WL 5095054, *8 (E.D. Mich. Aug. 3, 2018), report and recommendations adopted by 2018 WL 4658999 (E.D. Mich. Sept. 28, 2018) (quoting Fenton v. HiSAN, Inc., 174 F.3d 827, 832 (6th Cir. 1999)); see also Crane v. Mary Free Bed Rehab. Hosp., 634 F. App'x 518, 526 (6th Cir. 2015) ("An employment decision cannot be caused by protected activity if the decisionmaker did not know about the protected activity."); Vander Boegh v. EnergySolutions, Inc., 536 F. App'x 522, 530 (6th Cir. 2013) ("The decisionmaker's knowledge of the protected activity is an essential element of the *prima facie* case of unlawful retaliation.") (quoting Frazier v. USF Holland, Inc., 250 F. App'x 142, 148 (6th Cir. 2007)). Small testified in her deposition that: "I mean, I guess they knew that a lot of people were actually going to join the class action lawsuit. I mean, so maybe they got wind of it, I'm not sure. But, I mean, this is easy stuff to actually find out." (ECF No. 42-4 at 9.) When asked if she had any facts to support her assertion that her hours were being reduced because of the class action lawsuit, Smith testified: "I don't have anything to actually support that, but right after I joined it then my hours started getting cut, it was just gradually going down." (ECF No. 42-4 at 10.) This is further supported by the undisputed fact that Defendants' "Global HR Compliance Department exclusively manages employment litigation matters" and "information related to an

- 17 -

individual employee's participation in a class action lawsuit is only accessible by the Global HR Compliance Department, Corporate Legal, and network administrators." (ECF No. 42-2 at 4.) Construing all facts in the light most favorable to Smith, the record only contains mere speculation that Small's supervisors could have been aware of her involvement in the FLSA class action lawsuit. See Adams v. Williamson Med. Ctr., No. 3:18-cv-00384, 2019 WL 4820457, *14 (M.D. Tenn. Oct. 1, 2019) ("While circumstantial evidence can support a reasonable inference of the decisionmaker's knowledge of protected activity, such evidence must be comprised of 'specific facts,' . . . particularly '[w]here the decisionmaker denies having knowledge of the alleged protected activity.'") (quoting Profitt v. Metro. Gov't of Nashville and Davidson Cty., 150 F. App'x 439, 443 (6th Cir. 2005) and Mulhall v. Ashcroft, 287 F.3d 543, 552 (6th Cir. 2002)). This is not enough to support a claim for retaliation as a matter of law.[10] As such, the undersigned submits that Small has failed to establish a *prima facie* claim for Title VII retaliation and recommends that Defendants' motion for summary judgment be granted.

    2.   Retaliation for Complaining to HR

---

[10]For this reason, the undersigned finds that a claim for retaliation under the FLSA would fail, as well. See Mansfield v. City of Murfreesboro, 706 F. App'x. 231, 235 (6th Cir. 2017) ("Title VII and FLSA retaliation claims are governed by the same framework[.]").

Small also appears to assert that she was retaliated against for complaining to Human Resources because she believed "management was transferring racial[ly] motivated calls to [her] and were pretending to be customers that were cursing and using racial slurs and comments." (ECF No. 1-1 at 3.) Accepting that her complaints to Human Resources constituted protected activity, and assuming that Defendants were aware of the activity and that her transfer constitutes an adverse employment decision, Small has not put forth any evidence to create a genuine dispute of material fact as to whether there was a causal connection between her protected activity and Defendants' materially adverse act. See Laster, 746 F.3d at 730. In Title VII retaliation cases, courts apply a but-for test to determine whether there is a causal connection between a plaintiff's protected activity and any adverse employment decision. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2012) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation. . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.")

The only evidence in the record to suggest that she was transferred to Lanter's team because of her complaints is her allegation that "Since December 12, 2012, I have been transferred to different supervisors after complaining to Human Resources[.]"

(ECF No. 1-1 at 3.) Small does not provide a reason for why she was transferred to Anderson's team in her complaint and merely states that the calls continued after the transfer. (ECF No. 1-2 at 2.) Indeed, the only times that she alleges she contacted Human Resources were in 2015 while she was on Jensen's team and in 2016 while she was on Taylor's team.[11] Thus, even construing all facts in the light most favorable to Small, she is unable to establish the *prima facie* elements for a retaliation claim based on her transfer to Anderson's team.

## D.  Title VII Discrimination

In addition to retaliation, Small checked the boxes for "Termination of my employment" and "Failure to promote me" in her complaint.[12] Because Small does not have direct evidence that she

---

[11]As described above, any claims related to these events are barred by Title VII's statute of limitations.

[12]In Small's complaint, she checked the boxes for race, color, and national origin discrimination. (ECF No. 1 at 4.) Her charge of discrimination with the THRC, however, only alleged race and national origin discrimination. (ECF No. 1-1 at 3.) It is well-settled that "[t]he exhaustion doctrine precludes an employee from suing under Title VII . . . unless she has exhausted her administrative remedies." Russ v. Memphis Light, Gas & Water Div., 720 F. App'x. 229, 236 (6th Cir. 2017). In order for a litigant to exhaust her administrative remedies, she must first file a charge of discrimination with the EEOC (or a corresponding state entity), after which "[o]nly claims that are included in the charge or are 'reasonably related to or grow out of the factual allegations in the EEOC charge' may be heard in federal court." Id. As Defendants argue, race, color, and national origin discrimination are distinct wrongs, and thus asserting one violation in an EEOC charge does not exhaust a party's administrative remedies for another. See Hood v. City of Memphis Pub. Works Div., No. 17-2869-SHM-dkv,

was either terminated or not promoted because of her race, the same McDonnell Douglas burden shifting framework applies. The *prima facie* elements to a claim for Title VII discrimination are "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or a similarly situated non-protected employee was treated more favorably.'"[13] Evans v. Walgreen Co., 813 F. Supp.

---

2018 WL 2387102, *4 (W.D. Tenn. Jan. 8, 2018) ("'[C]olor discrimination is distinct from race discrimination in that the former 'arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual.'") (quoting Moore v. Food Lion, No. 3:06-0712, 2007 WL 596955, at *2 (M.D. Tenn. Feb. 21, 2007)); Cooper v. Jackson-Madison County Gen. Hosp. Dist., 742 F. Supp. 2d 941, 950-51 (W.D. Tenn. Sep. 28, 2010) ("Although 'race' and 'color' were not defined by Congress in Title VII, interpretive guidance issued by the EEOC makes clear that the two are not synonymous."). Consequently, Small failed to exhaust her administrative remedies by not alleging color discrimination in her charge with the THRC. See Green v. Memphis Light, Gas, & Water, No. 18-cv-02269-JTF-tmp, 2018 WL 4374236, at *6-7 (W.D. Tenn. July 24, 2018), report and recommendations adopted by, 2018 WL 3995955 (W.D. Tenn. August 21, 2018) (finding that a litigant failed to exhaust administrative remedies where he did not check the color-based discrimination box in his EEOC charge but attempted to assert it in his complaint in federal court).

[13]The elements to a failure to promote claim under Title VII are: "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." White v. Columbus Metro. Housing Auth., 429 F.3d 232, 240 (6th Cir. 2005) (citing Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir. 2000)). Because this claim shares the same fourth

2d 897, 921 (W.D. Tenn. 2011) (quoting <u>Corell v. CSX Transp., Inc.</u>, 378 F. App'x 496, 501 (6th Cir. 2010)). Defendants do not appear to dispute that Small is a member of a protected class, that she suffered an adverse employment decision, and that she was qualified for the position.

Rather, Defendants argue that Small's claims fail as a matter of law because she has not identified a similarly situated, non-protected employee who was treated more favorably than her. "To be considered 'similarly situated' under the fourth element, 'the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects.'" <u>Jones v. City of Franklin</u>, 468 F. App'x 557, 562 (6th Cir. 2012) (quoting <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir. 1998)). "The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated[.]'" <u>Ercegovich</u>, 154 F.3d at 352; <u>see also</u> <u>Arnold v. City of Columbus</u>, No. 11-3459, 2013 WL 628447, at *6 (6th Cir. Feb. 20, 2013); <u>Martin v. Toledo Cardiology Consultants, Inc.</u>, 548 F.3d 405, 412 (6th Cir. 2008). "If a plaintiff claims to have received a harsher punishment than similarly situated employees, for example, one way that the plaintiff could establish a *prima facie*

---

prong as the general Title VII discrimination claim, the undersigned will consider them in tandem.

case would be to show that the employees with whom the plaintiff
seeks to compare himself or herself reported to the same
supervisor, were subject to the same standards, and 'engaged in
the same conduct without such differentiating or mitigating
circumstances that would distinguish their conduct or the
employer's treatment of them for it.'" Jones, 468 F. App'x at 562
(quoting Jackson v. FedEx Corp. Servs., Inc., 518 F.3d 388, 393
(6th Cir. 2008)).

     Nowhere in her complaint or the record does she reference any
comparator employees beyond a stand-alone paragraph that reads:

> Their exhibits clearly show that blacks [were] let go or
> 'Termed' when this is a predominantly white or a
> Caucasian company. There is far more white woman there
> that I observed. Most of the blacks there were black
> women. [The attached exhibits] show that Black or
> African American were termed way more. I only
> encountered 3 or 4 black men in almost 7 years that I
> worked there and none in management. The blacks or
> African Americans termed are without a shadow of a doubt
> black women."

(ECF No. 1-2 at 3.) Attached to the complaint is a spreadsheet
that purports to list the race of each employee terminated on the
same day as Small. (ECF No. 1-2 at 4-6.) While this document shows
that more African-American employees were terminated than
employees of other races, it is insufficient to establish that she
was treated differently than similarly situated employees in non-

protected classes.[14] <u>See</u> <u>Turner v. United Parcel Serv., Inc.</u>, No. 3:19-cv-00476, 2019 WL 5190992, at *4 n.4 (M.D. Tenn. Oct. 15, 2019) ("Turner's use of unidentified comparator employees would likely be insufficient, as an evidentiary matter, to support a *prima facie* case of discrimination."). Because Small has not established a *prima facie* claim for Title VII discrimination, the undersigned need not advance further in the <u>McDonnell Douglas</u> framework, and submits that Defendants' Motion for Summary Judgement should be granted.

### III. RECOMMENDATION

For the reasons above, it is recommended that Defendants' Motion for Summary Judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
_____
TU M. PHAM
Chief United States Magistrate Judge

March 8, 2021
_____
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S**

---

[14]It is unclear from the complaint whether Small is also asserting a claim for discrimination based on being denied the $3.00 per hour raise. To the extent that she is, however, there is nothing in the record to suggest that non-protected employees did not also receive pay cuts when they were moved to the Intuit TurboTax account.

OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.